# Richmond

## Lloyd W. Bangley et al. v. The Virginian Railway Company, et al.

November 30, 1953.

Record No. 4124.

Present, All the Justices.

The opinion states the case.

*W. M. Phipps, J. Randolph Davis, H. M. Woodward* and *I. W. Jacobs*, for the plaintiff in error.

*Williams, Cocke & Tunstall, Leigh D. Williams* and *Thomas R. McNamara*, for the defendants in error.

MILLER, J., delivered the opinion of the court.

Lloyd W. Bangley, hereinafter called plaintiff, was seriously injured about 1 o'clock a. m. on July 20, 1951, when a milk truck that he was driving across the tracks of the Virginian Railway Company was struck by its engine pulling a train of twenty-six cars. He instituted action against the Company and L. W. Steger, the engineer, and from an adverse verdict and judgment, he obtained an appeal.

Where the accident occurred, the double-tracked railroad extends from north to south, and Jordan avenue, a hard-surfaced public road along which plaintiff was driving, extends almost in an easterly and westerly direction and crosses the railroad nearly at right angles. The crossing is in a well populated area of Norfolk county just east of the city of Norfolk, and numerous vehicles pass over it daily.

Plaintiff, a milk truck driver, lived about three blocks from the place where he was struck and was thoroughly familiar with the crossing and physical conditions obtaining. Bangley was driving westwardly across the track, and the train which struck him was northbound.

The railroad is about two feet above the level of the street, which is graded up on both sides of the railroad to afford access across the tracks. On each side of the tracks,

this upgrade begins about twenty-two feet from the nearest rail, and the traveled portion of the street is about twelve feet wide where it crosses the bed of the railroad.

At the southeast corner of Jordan avenue and the railroad right of way, there is a lot enclosed by a fence. From an exhibit the fence appears to be between three and four feet high. The fence extends along the southern side of the street to within about twenty-five feet of the eastern rail, and thence southwardly down the eastern edge of the right of way, and along the fence some vines and bushes were growing.

According to evidence offered by plaintiff, as one approached the railroad from the east, the view to the left was materially obstructed. A work shop, garage and small shed were in the lot to the south of Jordan avenue, and several busses were parked behind these buildings near the railroad right of way. However, actual measurements and a survey disclosed that the work shop, which was the closest building to the track, was 72 feet from the eastern rail and 122 feet south of Jordan avenue.

The testimony was conflicting as to the existence and height of bushes and weeds growing near the track. Plaintiff's evidence was that bushes and weeds five to six feet high grew along the right of way and to within five or six feet of the eastern rail, and that they were cut the day after the accident. Testimony offered by defendants was to the effect that all bushes and weeds had been cleared from this area of the right of way before the accident, and that vision southward was unobstructed by any buildings or growth.

No warning sign or device other than the usual "crossbuck" boards in the form of an "X", bearing the words "Railroad Crossing," required by section 56-406, Code of 1950, was maintained at the crossing.

The night was dark and still with spots of fog in places. Plaintiff testified that as he approached the track, he was driving about 25 miles per hour, and that when he was within twenty to twenty-five feet of the eastern rail, and

thus opposite or slightly nearer to the track than the corner post of the fence enclosing the lot to his left, he brought his truck to a stop, looked both ways and listened for approaching trains. He neither saw nor heard any train so he shifted the gears of his truck and proceeded up the grade to the crossing, still looking to his right and left as he neared the rails. He was going about five to seven miles per hour up to the track, and at that speed he could stop in a foot or two, but he never saw or heard the train that struck him. He said that "there was no lights whatsoever coming," and that "I didn't hear no whistle, didn't hear no bell, didn't see no light." However, from where he said he stopped to look and listen, there was no structure to interfere with his view southward down the tracks, and he said that had there been a headlight on the engine, he would have seen it. His testimony bearing immediately upon that phase of the matter follows:

"Q. * * * But if the locomotive had a headlight on it, you would have been obliged to have seen it, wouldn't you?

"A. I imagine I would.

"Q. Well, no doubt in your mind about it, is there?

"A. No, sir. If he had a light and close enough on me, I probably would see it."

*    *    *    *    *    *    *

"Q. Now, as you were traveling up that 20 some feet, did you look again?

"A. I was looking all along."

The testimony of Howard Flora, another milk truck driver, tended to corroborate plaintiff as to the absence of a headlight and failure to sound a whistle or bell. He said that the train passed him when he stopped a mile or more south of Jordan avenue at another crossing where gates are maintained and which were being lowered, that the headlight was not burning, and that he did not hear any whistle or bell for that crossing.

Defendants presented affirmative and unequivocal testimony of the engineer and others that the headlight was burn-

ing and that the whistle and bell were sounded as the engine approached the crossing. The engineer also said that he was running about 35 miles an hour, and when 480 to 600 feet south of the crossing, saw the lights of plaintiff's truck as it moved westwardly toward the track. He anticipated no trouble and expected plaintiff to stop before reaching the track. When it appeared that plaintiff was not going to stop, the engineer applied the emergency brakes but could not prevent the collision.

The headlight of the engine is twelve feet, nine inches, above the track level and was thus about fourteen feet, nine inches, above the level of Jordan avenue where plaintiff says he stopped his truck. A survey and measurement taken "from eye level height" at a point in Jordan avenue thirty-five feet east of the eastern rail, disclosed that vision southwardly was unobstructed by any building or structure, and that the east rail was visible 550 feet to the south. On Jordan avenue seventy feet east of the track, the headlight of an engine 900 feet to the south was unobstructed by any building and could be seen.

Plaintiff contends that the crossing was unusually dangerous and that the company violated section 56-411, Code of 1950, by allowing bushes and weeds to grow along its right of way. It is also claimed that defendants operated the engine without headlight in violation of section 56-413, Code of 1950, and failed to sound a whistle and bell upon approaching the crossing (warnings required by section 56-414, Code of 1950) and that these omissions and violations of the respective statutes constituted negligence that caused his injuries.

In relying upon section 56-414, Code of 1950, he emphasizes the fact that even though he were guilty of contributory negligence, yet under the saving provisions of section 56-416, Code of 1950, he is not barred from recovery if defendants failed to give the statutory warnings.

However, at the instance of plaintiff the jury was told that if defendants failed to give the statutory signals, *i.e.,*

sound the whistle and bell, and such failure caused or contributed to the collision, then any contributory negligence on his part would not bar his recovery but could only be considered in mitigation of damages. At his request the court further instructed the jury that if defendant company failed to keep its right of way cleared of trees and brush, or if defendant failed to have the engine headlight burning, and such omissions, or either of them, proximately caused his injury without negligence on his part, then he was entitled to recover. Thus the jury was fully informed of the statutory duties imposed on defendants and the consequences of the violation of any of them. As the jury failed to find a verdict in any amount for plaintiff, it necessarily follows that it concluded that the statutory signals were given, and the other statutory duties were performed or that plaintiff was contributorily negligent.

Assignments of error are taken to the refusal of the court to give instructions 3 and 6, and to the granting of instruction D-A. The first two instructions would have submitted the question of whether or not the crossing was so dangerous as to render the statutory crossbuck sign in fact inadequate for the protection of the public. The latter instruction given for defendants told the jury that under the evidence there was no obligation on the railroad to maintain any signaling device or signs at the crossing other than the statutory crossbuck boards with the legend "Railroad Crossing" thereon.

The refusal of plaintiff's two instructions, *i.e.*, 3 and 6, and the giving of instruction D-A took from the jury the issue of whether or not there was negligence on the part of the company in not providing a signal to warn plaintiff of approaching trains, and that ruling of the court is the gravamen of this complaint. Reliance is placed by plaintiff upon the decisions of *Ivory Storage Co., Inc.* v. *A. C. L. Railroad Co.*, 187 Va. 857, 859, 48 S. E. (2d) 242, and *A. C. L. Railroad Co.* v. *Bowen*, 192 Va. 162, 63 S. E. (2d) 804, to sustain his contention that the issue was for the jury.

Insofar as plaintiff is concerned, the two cases relied on are factually much different from the one now before us, and readily distinguishable therefrom. In both cases the drivers of the automobiles (and in the *Bowen* case, the injured passenger) were strangers in the vicinity and unaware that the highway crossed a railroad. The collisions occurred where the company's main line track crossed much-traveled Route 60 slightly west of the city of Richmond. In neither case was it shown that a sign of the type required by section 56-406, Code of 1950 (section 3985, Code of 1942), was maintained at the crossing, nor was the highway graded up to an elevated track and the railroad crossing thus made noticeable to an approaching driver. In each instance, the driver was dangerously near the tracks before he became aware that he was approaching a railroad. No such conditions confronted Bangley, for he was familiar with the location and character of the crossing, and according to him, he stopped a short distance from the track to look and listen for trains.

In *Grand Trunk Railway Co.* v. *Ives*, 144 U. S. 408, 12 S. Ct. 679, 36 L. ed. 485, cited with approval in the *Ivory Storage Co.* and *Bowen* decisions, *supra*, it is said.

" * * * It seems, however, that before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must be first shown that such crossing is more than ordinarily hazardous." (At page 421.)

The opinion in that case, in turn, quotes from *Freeman* v. *Railway Co.*, 74 Mich. 86, 91, 41 N. W. 872, thus:

"The law puts upon the Railroad Commissioner the duty of determining the necessity of establishing a flag-man upon any particular street crossing of a railroad, and the absence of a flag-man at Genesee street crossing, where the accident occurred, is of itself no evidence of negligence upon the part of the defendant. And the plaintiff must show that the circumstances of the crossing are such that common

prudence would dictate that the railroad company should place a flag-man there, or his equivalent. * * * ."

In *Atlantic Coast Line R. Co.* v. *Clements, Adm'r., etc.,* 184 Va. 656, 667, 30 S. E. (2d) 553, we quoted with approval *Lawson* v. *Minneapolis, St. Paul, etc., Ry. Co.,* 174 Minn. 404, 406, 219 N. W. 554:

"It is only where peculiar and unusual conditions render a crossing extra-hazardous that a railroad company can be charged with negligence in failing to protect it by gates or other safeguards, unless the duty to provide such protection has been imposed by authority."

Furthermore, plaintiff testified that he stopped his truck about twenty-five feet from the track; that from that position and as he slowly proceeded forward, he would have seen the headlight on the engine had it been shining and could have stopped in a foot or two. For these reasons, as well as because of his personal familiarity with the crossing, he is in no position to claim that any bushes or structures prevented him from seeing the oncoming train or rendered the crossing so unusually dangerous as to require additional warning devices for his protection.

Assignments of error are taken to refusal of instruction 5 and to the giving of instruction D-4, both of which have to do with contributory negligence. Instruction 5 reads as follows:

"The Court instructs the jury that while it was the duty of plaintiff before crossing the railroad to look and listen with reasonable care for approaching trains, *his failure to see or hear the approaching train is not necessarily negligence on his part, unless by so looking and listening he was bound to have discovered it.*" (Emphasis added.)

The jury had been told in one instruction that the burden of proving contributory negligence was on the defendants unless it appeared from plaintiff's evidence, or might be fairly inferred from all other facts and circumstances. In another instruction, the jury was informed that if the statutory signals, *i.e.,* whistle and bell, were not sounded,

plaintiff's contributory negligence did not bar a recovery. Thus the burden of proof of contributory negligence and its effect had been fairly presented to the jury. To a layman the meaning and effect of instruction 5 would have been difficult to determine. The fine distinction made by the language, "his failure to see or hear the approaching train is not necessarily negligence on his part, unless by so looking and listening he was bound to have discovered it," would hardly have been comprehended by the jury and might well have been misunderstood. The jury could easily have interpreted it to mean that plaintiff should not be held guilty of negligence unless he was bound to have seen or heard the train. There was no error in refusing the instruction.

Nor do we find any vice in instruction D-4. It merely told the jury that when about to cross a railroad track, a driver must look and listen for trains, and if such precaution apprises him of the near approach of a train, he should refrain from going on the crossing. Should he refuse to heed the obvious danger and undertake to cross the track, he is guilty of negligence, and if his rash act is the sole proximate cause of the accident, he cannot recover.

Plaintiff complains because the jury was told by instruction D-12, which was excepted to, that "they must not let any sympathy they may feel influence their verdict," and that their verdict must not "be based in whole or in part, upon conjecture, surmise or sympathy."

When plaintiff was examined as a witness, his counsel asked him, "Are you married or single?" He answered, "I am married now; a boy two and half years old." On objection, the answer was stricken out. Yet the question should not have been asked for it had no bearing on the merits of the case and could only appeal to the sympathy of the jury. *Southern Railway Co.* v. *Simmons*, 105 Va. 651, 55 S. E. 459; *Crawford* v. *Hite, Adm'r., etc.,* 176 Va. 69, 10 S. E. (2d) 561.

The instruction may not have been needed because the

objectionable answer was stricken out, yet certainly in view of the question and plaintiff's answer, it amounted to no more than a further warning to the jurors not to be influenced by sympathy, but to decide the case solely upon the evidence and instructions. This assignment of error is without merit.

By instruction D-9, objected to by plaintiff, the jury was told that "the testimony of a witness that he did not hear a whistle blow or a bell ring is not entitled to the same weight" as the positive testimony of one who says that the whistle and bell were sounded unless it appears that the former had as good an opportunity to hear the whistle and bell, and that it is probable that he would have heard them.

This instruction evidently had reference to the testimony of witness Flora who testified that the train passed him at a crossing which he said was a mile or more south of Jordan avenue, and he heard no whistle or bell. He stopped because of the lowered gates, and thus his attention may not have been directed to whether or not the signals were given. In any event, the circumstance testified to was somewhat remote, and of little or no probative value, for it had to do with a different crossing.

Negative and positive testimony have been often defined, and the difference in the weight and probative value of these two kinds of proof is well recognized. The testimony of Flora warranted an instruction upon that phase of the case, and we find no error in this respect. *Chesapeake & Ohio Rwy. Co. v. Jacobs, Adm'r.*, 166 Va. 11, 183 S. E. 221; *Southern Rwy. Co., v. Berry, Executrix*, 172 Va. 266, 1 S. E. (2d) 261; 7 M. J., Evidence, sec. 279, p. 668, and cases cited.

Instruction D-18 told the jury that if the headlight was burning, then plaintiff was guilty of contributory negligence, but that would not bar his recovery if the statutory signals were not given, yet it should be considered in mitigation of damages.

This instruction was warranted by plaintiff's own testi-

mony, which was that if the headlight were burning, he would have seen it. Thus he cannot complain if he is charged with contributory negligence for not seeing it if it was in fact burning.

We have considered the other assignments of error which raise substantially the same questions as those discussed, and we find that no reversible error is disclosed by any of them. For the reasons stated, the judgment is affirmed.

*Affirmed.*