# Richmond

## Southern Railway Company v. Donald C. Wilson.

March 7, 1955.

Record No. 4343.

Present, All the Justices.

Error to a judgment of the Corporation Court of the city of Charlottesville. Hon. R. Watson Sadler, judge presiding.

The opinion states the case.

*Thomas B. Gay, Lewis F. Powell, Jr., H. Merrill Pasco* and *Coles & Richmond*, for the plaintiff in error.

*Timberlake & Smith*, for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Donald C. Wilson sued the Southern Railway Company, seeking to recover damages for personal injuries sustained by him in a crossing accident which involved a westbound tractor-trailer truck driven by Wilson and a northbound train of the railway company.

The motion for judgment assigned negligence allegedly attributable to the railway company, *viz*: (1) unlawful speed; (2) failure to keep proper lookout; (3) failure to give warning of train's approach; and (4) failure to maintain suitable warning signs. The railway company's answer to the motion denied the allegations of negligence and asserted that even if it were guilty of negligence such did not contribute to Wilson's injuries; that Wilson was guilty of contributory negligence and that such negligence was the proximate cause of the accident.

The case was tried before a jury. At the conclusion of plaintiff's evidence and again at the conclusion of all the evidence the defendant's motion to strike was overruled. The jury returned a verdict for the plaintiff. Defendant's motion that the verdict be set aside as being contrary to the law and the evidence was overruled and, over its objection, the court entered judgment thereon. We granted the defendant a writ of error.

The railway company assigns four errors which according to its brief pose four questions for decision. In our view of the case, however, it is only necessary for us to consider one question, *i.e.*, was Wilson guilty of contributory negligence as a matter of law?

It is conceded that as the accident occurred in the city of Charlottesville and the ordinances of the city concerning crossing signals are permissive only, the comparative negligence rule does not apply. Therefore, if appellee was guilty of negligence which proximately contributed to his injuries there can be no recovery. *Southern Railway Co.* v.

*Davis,* 152 Va. 548, 147 S. E. 228; *A. C. L. R. Co.* v. *Clements,* 184 Va. 656, 36 S. E. (2d) 553.

■ The jury's verdict, bearing the approval of the trial court, requires us to view the evidence in the light most favorable to the plaintiff. Viewed in this light, the evidence discloses that at the time of the accident the plaintiff, who was 30 years of age, was employed as a truck driver; that on November 30, 1952, he drove his employer's large tractor-trailer truck, loaded with cattle, to Richmond; that he left Richmond on the return trip in the late afternoon on that day and at approximately 8:00 p. m. was driving on Dale avenue in Charlottesville, approaching the grade crossing of the railway company's main line tracks. He testified that he was familiar with the crossing, having used the same that morning and on at least one other occasion; that it was a clear, cold night; that as he approached the crossing at a speed of four or five miles per hour in second gear, the second lowest of five gears and the lowest gear he usually used, he saw the "cross buck sign" warning of the crossing; that he stopped his truck approximately 30 feet from the crossing at a point 10 feet past the last house before the crossing on his left; that he rolled the window down on his side of the cab of the truck when he stopped but the window on the other side remained up; that he looked to the right and to the left; that he had an unobstructed view of the tracks and did not see anything except "a lot of lights to the left"; that he did not hear anything except a truck behind him which he heard only after he had lowered his window; that he did not recall whether he rolled the window up on his side before undertaking to cross the tracks; that he proceeded to cross the railroad which was slightly upgrade from the point where he had stopped.

Wilson further testified that he heard no whistle or bell but when the front wheels of his truck were on the first rail of the track he became aware of the approaching train for the first time when he noticed its headlight a distance of some 120 or 130 feet south of the crossing, and at that time

the train was moving at a speed of slightly more than 25 miles per hour; that he immediately stopped and tried to get his truck in gear to back off the track but an instant later the truck was struck by the train.

The picture exhibits introduced by the plaintiff and the defendant's map exhibit used in the trial of the case show that the railway company's tracks run generally north and south, and that Dale avenue crosses the tracks in an easterly-westerly direction; that the defendant's train on the occasion was approaching the crossing from the south and that the truck driven by the plaintiff was approaching the tracks from the east. The plaintiff was seated in the truck on the side from which the train was approaching. The exhibits show a clear view of the track from where the plaintiff stopped his truck for a distance of 1833 feet in the direction from which the train approached.

The evidence discloses that the train consisted of a diesel engine of two units and nine cars; the headlight of the engine was the usual large non-oscillating light.

R. L. Morris, a witness called by plaintiff, lived on the south side of Dale avenue about 150 feet to the east of the crossing. He testified that he was in bed at the time of the accident and that he heard and saw the train from his southwest window while it passed points located some 350 feet south of the crossing. Morris stated that he could see the light on the front of the engine and that he estimated the train's speed at approximately 25 to 30 miles an hour. He further testified that usually in looking south from the crossing down the railroad track at night a number of lights could be seen. He further stated that he heard the truck as it approached the crossing and that he heard the train coming, and "* * * I didn't ever hear the truck whether he stopped or not and I just wondered whether he was going to stop"; that "the train was making right much noise * * * I could see the headlights when it passed by my window"; that he heard the whistle of the locomotive sound twice immediately before the crash.

Plaintiff's own testimony and the physical facts shown by his picture exhibits and the map used at the trial establish that the plaintiff was guilty of contributory negligence as a matter of law.

Plaintiff stated that after stopping his truck 30 feet from the track and looking in both directions, he drove the vehicle on the crossing in face of the oncoming train without seeing or hearing it until the front wheels of his truck were on the first rail of the track, at which time the train was 120 or 130 feet away. His view in the direction of the oncoming train was admittedly unobstructed for a distance of 1833 feet at all times after he reached a point on Dale avenue 50 feet east of the crossing. His only excuse for driving upon the tracks was that he could not distinguish the headlight on the diesel engine from the street lights and the lights around the station. This novel excuse is untenable. The station lights were more than 1800 feet away, and street lights could hardly be confused with the headlight on a moving engine. If so confused, plaintiff was not relieved of the duty to look and listen with reasonable care before going on the crossing. The confusion, if such existed, imposed upon him the duty of using such reasonable care and caution as was commensurate with existing circumstances. *N. & W. Railway Co.* v. *Eley*, 157 Va. 568, 162 S. E. 3.

Plaintiff's witness, Morris, lying in bed, 150 feet away, said that he both saw and heard the train approaching the crossing, and that the train was making "right much noise". The plaintiff's opportunity to see and hear the train from his preferred position before driving upon the tracks was clearly superior to that of Morris.

We have repeatedly held that the duty of looking and listening for approaching trains before undertaking to cross a railroad track must be discharged in a way to make the looking and listening reasonably effectual. *U. S. Spruce Lumber Co.* v. *Shumate*, 118 Va. 471, 87 S. E. 723; *Southern R. Co.* v. *Jones*, 106 Va. 412, 56 S. E. 155.

We said in *Wray v. Norfolk Etc. R. Co.*, 191 Va. 212, 215, 61 S. E. (2d) 65, 67:

"A traveler upon a highway, who, on approaching a grade crossing, stops his vehicle in a place of safety, apparently for the purpose of looking and listening for trains which may be approaching, and then proceeds upon the tracks at a time when a train in full view is approaching less than 200 feet away, at undiminished speed, is guilty of a reckless disregard of all precautions for his own safety. Among the recent cases in which this principle was applied, see *Atlantic Coast Line R. Co. v. Clements*, 184 Va. 656, 36 S. E. (2d) 553; *Norfolk & Western R. Co. v. Epling*, 189 Va. 551, 53 S. E. (2d) 817; and *Butler v. Darden*, 189 Va. 459, 53 S. E. (2d) 146."

Appellee's own testimony, considered in conjunction with the physical facts surrounding the accident, convict him of contributory negligence which bars his recovery.

For the reasons stated the judgment of the trial court is reversed and final judgment is here entered for the defendant.

*Reversed and final judgment.*