## Richmond

HESTER D. MANN, ADMINISTRATRIX, ETC. v. NORFOLK AND WESTERN RAILWAY COMPANY.

January 20, 1958.

Record No. 4715.

Present, All the Justices.

The opinion states the case.

*Philip H. Hickson* and *Paul Whitehead* (*L. R. Thompson*, on brief), for the plaintiff in error.

*Thomas S. Kirkpatrick* and *William Rosenberger, Jr.*, for the defendant in error.

SNEAD, J., delivered the opinion of the court.

John Albert Mann, a guest passenger in a pickup truck operated by Henry T. Millner, died as a result of injuries sustained when the truck and a Norfolk & Western Railway Company train collided at a grade crossing. Hester D. Mann, Administratrix, instituted action

for damages under the death by wrongful act statute (§ 8-633 *et seq.* Code 1950) against Millner and Norfolk & Western. Before trial a non-suit was taken as to Millner. At the conclusion of all the evidence and over the objection of plaintiff the court sustained defendant's motion to strike plaintiff's evidence. Plaintiff's motion to set aside the jury verdict for defendant was overruled, and exceptions were taken to the court's ruling.

The parties will be referred to as plaintiff and defendant in accordance with their respective positions in the court below.

The court having struck plaintiff's evidence, we must, in accordance with the well established canon, view the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff. *Pike* v. *Eubank*, 197 Va. 692, 698, 90 S. E. 2d 821; *Mason and Dixon, Inc.* v. *Casualty Co.*, 199 Va. 221, 222, 98 S. E. 2d 702; 7 M. J., Evidence, § 297, p. 693.

The sole issue to be decided is whether the court erred in striking plaintiff's evidence. It requires that the evidence be stated in some detail.

The accident occurred about 4:30 P. M. on November 16, 1954, at a private grade crossing approximately 2 miles north of Naruna. The single railroad track runs in a northerly and southerly direction and the private crossing runs in an easterly and westerly direction. The crossing is maintained for the convenience of Millner and other persons residing on the west side of the track. The road is constructed of sand and clay and is covered with gravel. It is approximately 10 feet wide. South of the crossing the track is straight for a distance of more than 3,500 feet and is on a downgrade proceeding northwardly. The downgrade for the 250 feet immediately south of the crossing is 76 hundredths of one percent.

Millner, who was the operator of a 1950 Chevrolet pickup truck involved in the collision, owns lands adjoining the right of way of defendant on the west. His tobacco barn is situated near the road 365 feet west of the crossing. Proceeding eastwardly from the barn to the crossing, the road first bends to the right or southwardly and then at about 2 feet from the west rail it turns left and crosses the track at approximately right angles. From the right of way property line to the center of the track there is a distance of 48.5 feet and the road ascends on a grade of 9.17 percent. At the right of way line the road bed is 5.5 feet lower than the west rail of the track. At the time of the collision there was a triangular mile post off the

south side of the road 13.3 feet west of the west rail which Millner said obstructed his view. Its dimensions were 1.1 x 1.1 x 1.5 feet and it stood 5 feet high.

The road is depressed about 1.5 feet and along the bank on the south side of it there was in November, 1954, a three strand wire fence which was supported by wooden posts spaced at intervals. There was also a cross wire fence supported by wooden posts south of the road running along defendant's right of way line on the west. There were broomstraw approximately 4 feet high and bushes along the fences and on defendant's right of way, which Millner said impaired his view to the south. On defendant's right of way there is a bank 22 feet west of the track which at its intersection with the road is 2.3 feet high. This bank continues in a southerly direction and at a point 160 feet south of the road it is 7.5 feet higher than the road is at the right of way property line and approximately 1.5 feet higher than the track. There were at the time no other obstructions south of the road and west of the track. The land was an open field.

Millner had lived on the farm west of the track since 1921. He used the crossing on an average of once or twice a day. He said he knew that the train usually passed the crossing between 4:00 and 4:30 in the afternoon and he thought John Albert Mann, plaintiff's decedent, who had lived in the neighborhood for about 5 years, also had knowledge of this fact. Millner, who was plaintiff's witness, said that it was "awfully dark, drizzly and misty and cloudy", and was not long before sundown. On cross examination, he stated it was broad daylight. There was no evidence that the lights were burning on either the truck or the locomotive or that there was need for lights. The road was wet and rough.

Plaintiff's decedent entered the cab of the truck at the barn and was seated on Millner's right. The left window was closed and the right window was open about 2 inches. Millner proceeded eastwardly toward the crossing and when he reached defendant's west right of way property line, which was 48.5 feet from the center of the track, he stopped, looked to his left and "didn't see anything coming and looked to the right and couldn't see anything". He listened and did not hear a bell or whistle of an approaching train. He said the fence post interfered with his vision, but he estimated he could see about 150 feet south of the crossing on the track.

Millner then proceeded upgrade in low gear at a rate of speed he estimated was 4 miles per hour. As he approached the track he

looked to his left, which is north, and then to his right, which is south, and observed the train about 150 feet distant traveling between 45 and 50 miles per hour. On cross examination he estimated it was 60 feet from him. He then pushed in his clutch, applied his brakes and stopped about 3 or 4 feet short of the west rail. He shifted his gear from low to neutral and attempted to put the motor in reverse but was not able to do so before the right front of his truck was struck by a part of the locomotive which protruded over the west rail between 30 and 37 inches. He said he could not see the track in front of him due to the upgrade; that the cab had the effect of an "umbrella" over them which impaired their vision while ascending the approach to the crossing, and he did not think he was close enough to be struck.

He stated that plaintiff's decedent was sitting up straight in the truck and he did not know whether he was watching for the train. He did not caution Millner that the train was approaching. There was no other traffic at or near the crossing and the truck did not make any noise.

Defendant's train consisted of a small Mallet freight engine, 13 freight cars, 1 coach, and a caboose and was approximately 757 feet long. The locomotive stood 15.5 feet above the track. Its power had been cut off at Naruna High School, as was customary, and the train had been drifting from that point.

Trooper T. R. Sexton, who investigated the accident, was called by the plaintiff and testified that Millner told him at the hospital on the night of the accident that he did not stop and he did not see the train. Millner denied having made the statement. He further testified he talked that night to Bruce N. Conner, fireman on the locomotive and the only eyewitness besides Millner. Sexton said: "I called Mr. Conner and talked to him and he told me that he saw the pickup truck coming across the field. He saw the truck coming up the road and the truck kept on coming but right slow and he thought it was going to stop so he didn't blow his whistle and didn't ring the bell and he watched the truck all the way up there and when it got up close to the crossing he said it never did stop, and after he got close to it he then changed his mind and decided he wasn't going to stop so he grabbed the bell and whistle and they all hit at the same time." Sexton further stated while sitting in his car 18 feet from the west rail and looking south he could see the track approximately 1,000 feet, and from that point to the track there is noth-

ing to prevent an operator from seeing a train approaching.

There was evidence that defendant's trainmen customarily sounded signals if there was in view a vehicle approaching the crossing.

S. M. Hubbard, an employee of Virginia Motors, testified that the average eye level of a person 6 feet tall and sitting in a natural position at the driver's seat of a 1950 Chevrolet pickup truck is 61 inches from the ground.

At the request of plaintiff, William Massie Warwick, a surveyor, made a topographic map of the crossing which was introduced as an exhibit. He stated that at the right of way property line, where Millner said he first stopped, a person in a truck with an eye elevation of 60 inches, could not see the track at a point 160 feet south of the crossing because the bank was 1.5 feet higher than the track and on the bank was broomstraw. He conceded, however, an object 5.5 feet or more above the track could be seen from the crossing to a point 160 feet south. He also stated that at a point 20 feet west of the crossing, a driver could see south along the track for a distance of approximately 3,000 feet, and the only obstruction would be the vehicle in which he was riding.

Charles H. Kirkland, a land surveyor, at the request of plaintiff also made observations of the topography and the view available to an operator of a vehicle along the road to the crossing. He used his own pickup truck for testing and at the right of way fence his eye level was 64 inches. There he could see a stake 18 inches high between the rails at a distance 200 feet south of the crossing and said that he could have seen a locomotive probably 300 feet. He related he stopped again when his body was 18 feet west of the west rail. Sitting in a normal position the mile post obstructed his view to the south, and he could see no further than his 300 foot stake which was also 18 inches high. By leaning forward he could see his 350 foot stake. To the left or north of the crossing his vision was limited to 350 feet. At a point 12 feet west of the track he said he could see another 18 inch stake 370 feet south of the crossing. He stated that beginning at the right of way fence line and proceeding east toward the track, there was no point from which a locomotive could not be seen at least 200 feet.

Bruce N. Conner, who was fireman on the locomotive and a witness for defendant, testified he was seated on the left side of the engine's cab and that he first noticed the truck when it was about 225 feet west of the crossing proceeding eastwardly at a speed of 25

miles per hour and his train was approximately 320 feet from the crossing moving between 30 and 35 miles per hour. He said he turned on the bell valve and looked again at the truck which was then about 150 feet from the crossing and thought it was going to stop. When the truck reached a point 35 feet west of the track and the train a point 50 feet from the crossing, he stated, the truck's speed increased and he then told the engineer to stop and at the same time he reached for the whistle cord. The whistle blew, the engineer applied emergency brakes and the collision occurred.

Plaintiff and defendant introduced a number of photographs taken at the location of the accident, showing various views of the road, track and right of way. The camera which made plaintiff's shots was 58.5 inches above the ground and the camera which took defendant's photographs was 60 inches above the ground. Included were photographs looking south, taken at a point 17.4 feet west of the west rail and in the north wheel track of the road. Some of these photographs had the train stationed 84, 1,084 and 1,267 feet south of the crossing and it was clearly visible in each.

Plaintiff contends there was sufficient evidence of negligence on behalf of defendant to submit that issue to the jury. She concedes that the statutory duties imposed upon railroads with regard to public crossings (§ 56-414, Code 1950) are not applicable to the instant case, but argues that defendant was under a duty to exercise reasonable care toward persons using the crossing and that defendant breached this duty by not giving timely warning of the oncoming train after having seen Millner's truck approaching the crossing. Plaintiff also contends that the evidence was sufficient to submit to the jury the question of contributory negligence of plaintiff's decedent.

In *Butler* v. *Darden*, 189 Va. 459, 53 S. E. 2d 146, Butler's administratrix instituted action against Darden and Seaboard Air Line Railway Company. Butler was a guest passenger in the right front seat of an automobile operated by Darden proceeding northwardly at 10 miles per hour, which was struck by an engine of the railway company proceeding westwardly at a grade crossing. The road as it approached the right of way was approximately 3 feet lower than the crossing and there was a short rise to the track level. At a point approximately 115 feet south of the track and east of the road there were brush and weeds which obstructed Darden's view to his right. This condition continued until Darden reached a point about 60 feet

from the main track when he had virtually a clear vision from there to the crossing. Darden and Butler were familiar with the crossing and neither saw the train until the front of the car was on the track, at which time Butler warned Darden of the train and brakes were applied but too late to prevent the collision. A verdict for the plaintiff against both defendants was set aside and final judgment entered for defendants.

In affirming the judgment, this court said that there was sufficient evidence to convict Darden of gross negligence in that the jury could find that he, who was familiar with the conditions and surroundings at the crossing, drove onto the track in front of the approaching train, without listening or looking, when the train was in plain view. The court stated that if Darden was guilty of gross negligence, then that evidence clearly convicted Butler, who was his passenger, of contributory negligence which barred his recovery. Butler was also familiar with the crossing and it was his duty to look and listen. He was seated in the vehicle where he could have done so more effectively than Darden.

The court further said: "While the negligence of the driver is not to be imputed to the passenger, yet the passenger must exercise reasonable care for his own safety. He must look and listen and warn his driver if he sees a train approaching. The railroad track is to him, as to others, a signal of danger. Since he knew the crossing and its use and the condition of its approaches, more was required of him than of a stranger to the locality. He should have looked and listened where it would have been effective and this duty was commensurate with the character of the crossing as he knew it to be." (Citing cases.) See also *C. & O. Ry. Co. v. Hanes, Adm'r*, 196 Va. 806, 86 S. E. 2d 122; *Southern Ry. Co. v. Wilson*, 196 Va. 883, 86 S. E. 2d 53; *Norfolk & Western Ry. Co. v. Fletcher*, 198 Va. 397, 94 S. E. 2d 251.

In *Southern Ry. Co. v. Callis*, 193 Va. 28, 34, 67 S. E. 2d 879, plaintiff, a pedestrian, was struck by defendant's train. The court stated: "It is well settled in this jurisdiction that a railroad track is a proclamation of danger, which imposes upon a person desiring to cross or stand on it a duty to look and listen with reasonable care. This duty cannot be discharged by claiming that no train was expected, or that the view was obstructed, or hearing impaired."

Millner who had lived on the farm west of defendant's track for 34 years and had crossed the track on an average of once or twice a

day is bound to have known every obstruction to a view of the track. Plaintiff's decedent was likewise familiar with the crossing for he had lived in the neighborhood for 5 years and had crossed many times. Both knew that the train usually passed between 4:00 and 4:30 in the afternoon. Yet at the approximate time the train was due, Millner, after stopping at the right of way fence line for the purpose of looking and listening, proceeded toward the track, which is proclamation of danger, without again stopping before it was too late.

It is true he said he looked to his left and then to his right and saw the train 150 feet from him and he applied his brakes and attempted to put his car in reverse, but undoubtedly he did not look and listen when looking and listening would be effective as he was required to do. A train could have been seen a considerable distance south of the crossing from any point at least 18 feet west of the track, which would have given a careful driver ample time to stop in safety.

Plaintiff's decedent was in a better position to see the train than Millner was for he was seated on the right side of the cab, from which direction the train was approaching. He was wide awake and in possession of all his faculties. There was nothing for him to do but look and listen. He was charged with the duty of exercising reasonable care for his own safety. It was also his duty to look and listen when looking and listening would be effective and as was said in *Butler* v. *Darden, supra,* "this duty was commensurate with the character of the crossing as he knew it to be." According to Millner, plaintiff's decedent was sitting up straight and he did not know whether he was watching for the train. Mann did not caution him about the approaching train. If Mann had looked and listened it would have revealed the presence of the train and in failing to warn Millner he was contributorily negligent as a matter of law. On the other hand if he failed to look he was also guilty of contributory negligence as a matter of law.

Assuming, but not deciding, that the evidence discloses defendant was guilty of negligence, yet we must conclude that the evidence clearly shows plaintiff's decedent was guilty of contributory negligence as a matter of law which bars a recovery. The trial court did not err in striking plaintiff's evidence.

The judgment appealed from is

*Affirmed.*