# Richmond

EDWARD SWINDALL, ADM'R, ETC. v. TIVIS FULLER, ET AL.

January 26, 1959.

Record No. 4868.

Present, Spratley, Buchanan, Miller, Whittle, Snead and l'Anson, JJ.

The opinion states the case.

*Frank E. Beverly* (*Phipps & Beverly*, on brief), for the plaintiff in error.

*C. H. Combs* (*Hansel Fleming; Combs & Street*, on brief), for the defendants in error.

SNEAD, J., delivered the opinion of the court.

Mrs. Hettie Swindall, a pedestrian, was killed by an automobile driven by Tivis Fuller. Edward Swindall, Administrator of the estate of Hettie Swindall, instituted action for damages under the death by wrongful act statute (§ 8-633 *et seq.* Code 1950) against Fuller and Breaks Motor Corporation, the owner of the vehicle involved in the accident. At the conclusion of plaintiff's evidence, the trial court struck plaintiff's evidence on the ground that plaintiff's decedent was guilty of contributory negligence as a matter of law and entered judgment for defendants. We granted plaintiff a writ of error.

Plaintiff's assignments of error pose two questions. (1) Was defendant Fuller guilty of negligence which was the proximate cause of the accident? (2) Was plaintiff's decedent guilty of contributory negligence as a matter of law?

Defendants conceded at the bar of this court that in regard to the first question the evidence was sufficient to make it a jury question, but they contend that the evidence conclusively shows plaintiff's decedent was guilty of negligence as a matter of law.

The court below having struck plaintiff's evidence, we must view it and all reasonable inferences therefrom in the light most favorable to plaintiff. *Pike* v. *Eubank*, 197 Va. 692, 698, 90 S. E. 2d 821; *Mann, Adm'x* v. *Norfolk and Western Ry. Co.*, 199 Va. 604, 605, 101 S. E. 2d 535; 7 M. J., Evidence, § 297, p. 693.

The accident occurred on Sunday, March 10, 1957 at approximately 10:30 A. M. on State Highway No. 83 near Cranes Nest River Bridge at a point opposite the Church of Christ in Dickenson County between Clintwood and Fremont, Virginia. The record does not show the directions of the highway. The paved portion of the highway is 22.5 feet wide and the speed limit was 55 miles per hour. The weather was clear and the road was dry.

W. A. France drove his wife, Draxie France, and Mrs. Swindall to the church where the ladies planned to attend the services. France's intention was to continue toward Fremont for other purposes. He testified he stopped his vehicle completely off the paved portion of the highway on the opposite side from the church and discharged his passengers. He then moved forward 10 or 12 feet and stopped with his left wheels about 2 feet on the paved surface as the car door was not shut tight, and he decided to remain there until the oncoming Fuller car had passed. From that point vision on the highway was clear in both directions between 300 and 400 feet. Approximately 100 feet ahead of the point where France stopped and

on his left side of the highway a dirt road leading from Cranes Nest River intersects the highway. To his right between that road and where his car was parked, is Herb Wolford's restaurant. Several cars were parked on the shoulder between the restaurant and France's car. Across the highway there were vehicles parked in the church yard opposite the point where Mrs. Swindall was struck. About 200 feet back of the point where he stopped another dirt road intersects the highway.

Mrs. Swindall, who was a stout person and 71 years of age, alighted from the vehicle on the right-hand side and walked with Draxie France to the rear of it, looked for traffic in both directions and then proceeded to cross the highway in a normal gait toward the church yard. Draxie France returned to close the door of the automobile and while there she observed the Fuller car, a 1957 Ford tudor sedan, approaching in its proper lane from the direction of Fremont. She testified the vehicle was between 150 and 200 feet from Mrs. Swindall when she was "middle way or maybe a little past middle ways of the road." She immediately cautioned Mrs. Swindall: "Hettie, watch that car." Mrs. Swindall did not indicate whether she heard the warning, but she started to run and was struck when she was about 2 steps from the edge of the hard surface on the church side. Gladys Alexander, who was inside the church, said when Mrs. Swindall got "part of the way across" she started to run and when about two-thirds across she "froze in her tracks" just before she was struck. None of the other eye-witnesses testified she stopped before she was hit. The severe blow knocked her 10 to 15 feet in the air, rendered her unconscious and she died immediately after she was hospitalized.

Fuller's vehicle laid down skid marks of 145 feet in his lane, 100 feet before striking Mrs. Swindall and 45 feet after striking her. They were on a slight down grade for approximately one-third of their length.

Trooper Ian B. Dye, who investigated the accident but was not an eye-witness, estimated the speed of the Fuller car to be between 50 and 55 miles per hour. His estimate was based on the length of the skid marks and the chart provided in § 46.1-195, Code 1950 as amended. France testified it was traveling between 65 and 70 miles per hour and that there was no other vehicular traffic at the time.

Stella Boyd stated she asked Fuller what prevented him from seeing Mrs. Swindall and his reply was: "Well, I don't know; I

was scared and I guess I could have been looking off or I could have glanced off."

Fuller was called as an adverse witness by plaintiff. He testified as to facts concerning the question of agency, but did not testify as to facts relating to the accident.

"Whether a negligence case should be submitted to a jury or determined by a court must always turn on the facts of the particular case. Where the facts are such that reasonable men could draw no other inference or conclusion from them than that the plaintiff was, or was not, in default, then it is the province of the court to determine the question of his contributory negligence as a matter of law. In other words, where reasonable men can draw but one inference from the facts, negligence becomes a question of law." *Bottling Co. v. Lambert*, 196 Va. 949, 955, 86 S. E. 2d 156.

In *Rhoades* v. *Meadows*, 189 Va. 558, 54 S. E. 2d 123, plaintiff, a large 17 year old girl, descended from a bus in the day time and started walking to the rear of it as the bus moved forward. Before crossing the road, the paved surface of which was 18 feet wide, she looked to her left and observed a mill bus a considerable distance down the road. She then looked to her right and saw defendant's vehicle approaching from around a curve 450 feet away at a speed she thought was reasonable. Believing she had sufficient time to safely cross, she undertook to get on the other side. When she got to the center of defendant's side of the road she observed his vehicle approaching so fast she became apprehensive that she would be hit. She said its speed was 60 or 65 miles per hour. She started running and had crossed the hard surface and the 5 foot shoulder of the road and was struck in the ditch. The road was dry and visibility was good. Defendant knew of the bus stop but failed to see the bus until within 100 feet of it. He said he was approxmiately 25 feet in front of the bus when he first saw plaintiff who was standing at the back corner of the bus and that she stepped out into the middle of the road where he thought she was going to stay. He stated he reduced his speed from 35 to 25 miles per hour, yet his car skidded 96 feet before striking plaintiff. A jury verdict was returned for plaintiff.

We held that the jury were warranted in finding defendant guilty of negligence and that the evidence also presented a jury question on whether plaintiff was guilty of contributory negligence, since it could not be said that defendant was so dangerously close when

plaintiff undertook to cross that her act was negligence as a matter of law.

There we said at page 562:

"The rights of pedestrians and of motorists to use the highway are equal, and their duties are mutual and reciprocal, except in places where favored positions are assigned to one or the other by the law. The pedestrian is not required to await the passing of all automobiles that he sees coming. If so, he might spend most of his life on the side of the road. His duty is to await the passing of those which are approaching so near or at such rate of speed that a person exercising reasonable care for his own safety would not attempt to cross. *Core* v. *Wilhelm*, 124 Va. 150, 98 S. E. 27.

\* \* \* \* \* \* \*

"\* \* \* The pedestrian in all cases is required to exercise such care as an ordinarily prudent person would exercise under the existing circumstances. If he carelessly undertakes to cross without looking, or, if he looks and fails to see or to heed traffic that is in plain view and dangerously close, he is guilty of negligence, as a matter of law. \* \* \*"

In *Green* v. *Ruffin*, 141 Va. 628, 125 S. E. 742, 127 S. E. 486, defendant's vehicle was closer to plaintiff when she attempted to cross than was the automobile of defendant to plaintiff in the present case. Furthermore, plaintiff had farther to go in crossing than did Mrs. Swindall. There we held plaintiff's contributory negligence was a jury question. See also *Bethea* v. *Virginia Elec., etc., Co.*, 183 Va. 873, 33 S. E. 2d 651; *Ritter* v. *Hicks*, 102 W. Va. 541, 135 S. E. 601.

Before Mrs. Swindall attempted to make the crossing she looked to her left and then to her right. The hard surface of the highway was 22.5 feet wide and visibility was unobstructed between 300 and 400 feet. The record is devoid of any evidence that defendant's vehicle was in view when she started to cross and the jury could infer that it was not. If it was not in view it cannot be said that she was negligent in starting to cross. When she got to the center, or just past it, defendant's car was approaching at a distance of between 150 and 200 feet. France said it was traveling between 65 and 70 miles per hour. Draxie France warned her that it was approaching, but it is not certain Mrs. Swindall heard her. If she

did not hear the warning she must have been looking for she started to run for safety. It is probable that she was looking and also heard Draxie France's caution. Moreover, the evidence does not show that she failed to keep a reasonable lookout while attempting to cross.

Under these circumstances reasonable men may differ as to whether defendant was so dangerously close to plaintiff when she undertook to cross the highway that her act was negligence, and it was error not to submit the issues of negligence and contributory negligence to the jury.

For the reasons stated the judgment is reversed and the case remanded for a new trial.

*Reversed and remanded.*