## CIRCUIT COURT OF CAMPBELL COUNTY

Mattie B. Wright
and Keith Jerry Wright,
Co-Guardians of the Person
and Estate of
Riley E. Wright,
a Person Under a Disability

v.

Norfolk and Western Railway

### April 2, 1992

BY JUDGE J. SAMUEL JOHNSTON, JR.

This is my opinion concerning the issues under advisement in the above-styled case. The issues are three in number, and I will address them seriatim.

Issue I. Has federal law preempted plaintiff's claim of negligence concerning the failure of the defendant to provide adequate grade crossing warning devices?

Issue II. Did defendant waive objection to the issue of contributory negligence being submitted to the jury?

Issue III. Was Riley E. Wright guilty of contributory negligence as a matter of law?

### I.

This issue has been exhaustively briefed and argued by counsel. The memoranda from counsel cite and discuss the myriad cases dealing with preemption. The opinions of the various courts, both trial and appellate, reach opposite conclusions as to preemption in similar cases and often rely upon the same authorities to support the logic

they employ. Suffice it to say that this issue has not been addressed by the Supreme Court of Virginia, several of the federal circuits are in conflict, and the issue is wafting inexorably to the Supreme Court of the United States.

Federal preemption of state law may occur in three instances. Preemption may be explicit, implicit, or occur when state law is in conflict with federal law. Primarily, preemption occurs when the United States Congress intends that it should. If federal legislation or allowable rule or regulation evince an intention to "occupy and control" the area, the field is preempted. *See, Michigan Canners & Freezers Association, Inc. v. Agricultural Marketing and Bargaining Board*, 467 U.S. 461 (1984), and *English v. General Electric Co.*, — U.S. —, 110 S. Ct. 2270 (1990). The two most recent cases which support the plaintiffs' theory of no preemption are *Karl v. Burlington Northern Railroad*, 880 F.2d 68 (8th Cir. 1989), and *Easterwood v. CSX Transportation, Inc.*, 993 F.2d 1548 (11th Cir. 1991). The cases of *Armijo v. Atchison, Topeka & Santa Fe Railroad*, 754 F. Supp. 1526 (D. N.M. 1990), and *Hatfield v. Burlington Northern Railway Co.* (No. 91–3158, 10th Cir., filed March 6, 1992), find preemption of state law. All of these cases involve railroad accident cases and interpretation and application of the Federal Railroad Safety act of 1970 (FRSA) found at 45 U.S.C. § 434. These four cases analyze the same statutes and the same legislative history and the same regulations and come to conclusions which are at the antipodes.

Defendant urges that the preemptive provision of FRSA is conclusive evidence that Congress explicitly intended to preempt state law relating to "railroad safety." The statute, though, allows a state to "adopt or continue" rules, laws, standards, etc., until the Secretary adopts "a rule, regulation, order, or standard covering the subject matter . . . ." States may "adopt or continue in force" . . . . "law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce." It is interesting to compare this statute with the Federal Insecticide, Fungicide, and Rodenticide Act found at 7 U.S.C. § 136 (FIFRA). The preemption language of the FIFRA found at 7 U.S.C. § 136v(b) prohibits states from imposing or continuing "in effect any requirement for labeling or packaging in addi-

tion to or different from those required under this subchapter." The preemptive language in the FIFRA is much more direct and explicit than that in the FRSA. *Cf., Papas v. Upjohn Co.*, 926 F.2d 1019 (11th Cir. 1991).

The salient inquiry is whether or not state statutes or common law doctrines can coexist with federal law and regulations. One must ask whether or not federal legislation is so comprehensive that it leaves no room for supplementary state law or regulation. That is precisely what the Supreme Court held in *International Paper v. Ouellette*, 479 U.S. 481, 93 L. Ed. 2d 883, 107 S. Ct. 805 (1987), in a decision involving the Clean Water Act. The Supreme Court queried whether a state statute or common law doctrine stood "as an obstacle to the full implementation of the CWA" or if it interfered "with the methods by which the federal statute was designed to reach this goal." *International Paper v. Ouellette*, 479 U.S. 481, 93 L. Ed. 2d 883, 898, 107 S. Ct. 805 (1987). As alluded to before, in factual situations which are strikingly similar to each other and ours, the decision of the U.S. Court of Appeals for the Tenth Circuit in *Hatfield, supra,* and the decision of the U.S. Court of Appeals for the Eleventh Circuit in *Easterwood, supra,* reach opposite conclusions as to whether or not preemption by federal law had occurred.

Thus, I ask: does the allowance of the extant suit regulate the conduct of N. & W. to an extent contrary to that allowed by federal law and, therefore, is preempted? I find that the FRSA is not so comprehensive that preemption of a common law action in negligence has occurred. Nor am I persuaded that the action of the Secretary of Transportation in adopting the Manual on Uniform Traffic Control Devices on Streets and Highways (MUTCD) has the effect of superseding or preempting Virginia's common law doctrine that is otherwise applicable in this lawsuit. This finding by me is in accord with the *Karl* and *Easterwood* decisions, *supra,* as well as the district court opinion in *Hatfield.* My opinion is contrary to those in *Armijo* and *Hatfield, supra.*

While I have not counted the number of opinions which speak to the preemption issue in railroad crossing cases, it appears that the majority of opinions find preemption. While I freely admit that one can make a compelling argument for preemption, as defense counsel has so eloquently done here, I choose to employ the logic espoused in *Easterwood, Karl* and the district court in *Hatfield,* fully recogniz-

ing that this issue most probably will be resolved in the United States Supreme Court.

## II.

Did the defendant waive objection to the issue of contributory negligence being submitted to the jury?

Plaintiffs aver that the failure of the defendant to make a specific objection to the contributory negligence instruction waives any objection to that issue being resolved by the jury. They cite *Spitzli v. Minson*, 231 Va. 12 (1986), for that premise. I disagree with the position taken by plaintiffs. It was clear to me that the issue of contributory negligence was of paramount importance throughout the trial, and I believe it was spoken to at every meaningful stage of the trial. When I was first called upon to rule on the issue of contributory negligence at the close of the plaintiff's case, I refused to strike the plaintiffs' evidence after plaintiffs cited to me the case of *Higgins v. Bowdoin*, 238 Va. 134 (1989). There was evidence presented that plaintiffs had expended $30,000.00 in preparation for this trial. "It is a drastic measure to strike the evidence at the end of a plaintiff's case." "The costs to the administration of justice are high when a plaintiff's evidence is struck because, if the trial court's decision is reversed, the matter must be re-tried in its entirety." *Higgins, supra* at 141. I stated unequivocally that while I felt that the defendant was probably correct, the case would be submitted to the jury on the issue of contributory negligence and would be subject to further review by me, if necessary, after jury verdict.

Another factor in my decision to submit the case to the jury was the preemption issue being taken under advisement. I felt very strongly that the record should be developed on all issues since this case would very likely be decided in the Supreme Court of Virginia and perhaps in the Supreme Court of the United States. Contrary to the language in *Hilton v. Fayen*, 196 Va. 860, 86 S.E.2d 40 (1955), I do not believe that the defendant invited this court to commit error and now complains of it. For me to rule that defendant waived objection to the contributory negligence issue would require the harshest and most technically narrow interpretation of the law of waiver. It will be up to the Supreme Court to determine whether defendant complied with Rule 5:25 or is deemed to have waived objection. Accordingly, I rule that there was no waiver by the defendant on the

issue of contributory negligence, and it has been properly preserved for this court to consider.

### III.

Was Riley E. Wright contributorily negligent as a matter of Law?

It is established beyond question by Virginia law that the existence and presence of a railroad crossing is a signal of danger. No one seriously questions the fact that the railroad/street crossing at Brookneal was open and obviously hazardous. *See, Railway Company v. Sykes, Adm'r*, 200 Va. 541 (1959), and *Mann, Adm'r v. Norfolk and Western Railroad*, 199 Va. 604 (1957). A person must approach a known danger with care and caution. The degree of caution is commensurate with the level of the danger. The care and caution must be exercised in such a manner so as to render it effective. *Norfolk and Western Railway Co. v. Hagy*, 201 Va. 183 (1959). As simply stated in our jury instruction, ordinary care must be employed, and ordinary care will be determined from the facts and circumstances of this case.

Many variables factor into the equation in determining whether or not Riley E. Wright exercised ordinary care. The crossing was guarded only by cross-bucks. At the time of the accident, the train was operating at a lawful speed, blowing its whistle and ringing its bell. The geography and geometry of the crossing and the design of the truck made a heightened decree of caution and care absolutely necessary. Riley E. Wright was thoroughly familiar with this crossing and the hazardous nature of crossing the tracks in the subject truck. *Cf. Bangley v. Virginian Ry. Co.*, 195 Va. 340 (1953), and *Ivory Storage v. A.C.L. R. Co.*, 187 Va. 857 (1948). All of these factors, when considered with the uncontroverted evidence as to how the collision occurred, lead me to the inescapable conclusion that Riley E. Wright was guilty of contributory negligence as a matter of law and that his contributory negligence was a proximate cause of the collision and his injuries. *See, Norfolk and Western Railway v. Hagy*, 201 Va. 183 (1959).

The oncoming train was visible from the crossing for over 2,000 feet. Riley E. Wright left Route 501, following another dump truck, and proceeded to go onto the train tracks without further stopping or slowing down. The window of his truck was closed at the time of the collision. The record is totally devoid of any evidence, suggestion or

inference that Riley E. Wright exercised any care or caution whatsoever before entering onto the tracks. The expert opinion testimony offered by Dr. Harry Snyder helps explain the difficulty that Riley E. Wright would have had perceiving the presence of the train. His experiment demonstrated how difficult it would have been for Wright to hear the train and its warning signal because of the closed window and the engine noise from the truck. There is, however, no explanation or excuse offered by Dr. Snyder for Wright's failure to use the requisite care or caution that would have allowed Wright to avoid the collision. There was no more than sixty feet of visibility, at best, for Wright to look down the tracks for an approaching train, but this evidence serves only to reinforce and bolster the notion that Wright failed to exercise ordinary care for his own safety in crossing the tracks.

Though conclusory, the testimony of plaintiffs' expert, Archie Burnham, and fact witness, Roy Dean, is very telling. According to Burnham, Wright was blind to his right as he drove onto the tracks and as confirmed by Dean "You're taking a chance" when you cross the tracks as he and Wright did. (Tr. Volume I, page 287). Simply stated, the conduct of Riley E. Wright in driving onto the crossing as he did amounted to peradventure. The defense witness, Phyllis Mast, succinctly stated what caused the accident. "I just saw this big truck loaded with these huge gravels just pulling — it just was going right up to the tracks and just wasn't slowing down. I saw there in fear, you know, knowing what was going to happen, and he just never put brakes on, no brakes (sic) lights came on, nothing, just kept on going." (Tr. Volume IV, page 48). A ruling that Riley E. Wright was not contributorily negligent would equate to a ruling that a motorist may, when confronted with an open and obvious hazard and facing great difficulty in safely negotiating that hazard, ignore the foreseeable consequences and proceed without liability on his part.

In view of the conclusions I have reached, I am sustaining the defense motion to set aside the jury verdict and enter judgment on behalf of the defendant, as I find that Riley E. Wright was guilty of contributory negligence as a matter of law and the contributory negligence of Riley E. Wright was a proximate cause of the accident and his damages.

I have this day entered an order of record which sets forth in summary form my findings, sets aside the jury verdict, and enters judgment for the defendant.